**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:23-CV-00384 BJB-CHL**

**MARIANA MENDEZ MANCIA,**                                                          **Plaintiff,**

**v.**

**UNITED PARCEL SERVICE, INC, et al.**                                        **Defendants.**

**MEMORANDUM OPINION & ORDER**

Before the Court is the Motion to Quash filed by Defendant United Parcel Service, Inc.

("UPS"). (DN 18.)   Defendant Kieran Story ("Story") filed a response (DN 25), and UPS filed a

reply (DN 31).  Nonparty Mariana Mendez Mancia ("Mancia") did not file a response.  Therefore,

the motion is ripe for review.

### I.    BACKGROUND

Mancia originally brought this lawsuit against co-defendants Story and UPS in Jefferson

County Circuit Court in Kentucky on March 27, 2023.  (DN 18 at PageID# 220.)  Mancia's claims

were based on alleged workplace harassment by her manager, Story, while she and Story were

employed by UPS.  (*Id.*; DN 1-1 at 10-18.)  In April 2023, UPS and Mancia reached an agreement

to resolve Mancia's claims against UPS while the suit was pending in state court.  (*Id.*)  UPS and

Mancia entered into a written settlement agreement (the "Settlement Agreement") to memorialize

the resolution.  (*Id.*)  The settlement did not result in the waiver of any claims by Mancia against

Story in his individual capacity.  (*Id.*)  Shortly thereafter, however, Mancia moved to dismiss all

claims against UPS with prejudice on July 25, 2023 and dismissed all claims against Story without

prejudice.  (*Id.*; DN 1-1 at 145.)  Mancia reserved her right to bring suit against Story and removed

herself as a party to the action.  (*Id.*)

Story filed cross-claims against UPS, alleging race discrimination, retaliation, and hostile work environment in violation of the Kentucky Civil Rights Act arising from "scrutiny, undeserved punishment, and sanctions he suffered in conjunction with Mancia's allegations." (DN 25 at 328.)  On July 26, 2023, the action was removed to this Court.  (*See* DN 1.)  Given Mancia's departure, Story's claims now functionally serve as the only remaining claims in this case.  Story asserts that not all aspects of his claim are related to Mancia or her allegations because Story "also endured unwarranted treatment beyond the company's handling of Mancia's allegations."  (DN 25 at 328.)

On December 2, 2023, Story sent a notice of intent to serve a subpoena to Mancia, now a nonparty to this case, for the production of documents related to her original claims against UPS as well as her settlement with UPS resolving those claims.  (*See* DN 18-1.)  Story also provided UPS, through its counsel of record, with a notice of the subpoena.  (*Id.*)  The notice reflected that the subpoena would be issued on December 15, 2023 if no objections were registered.  (*Id.*)  The subpoena commanded Mancia to produce the following on or before January 5, 2023:

1. Any and all documents related to your claims against Kieran Story and/or United Parcel Service, Inc., as set forth in your Complaint in Case No. 23-CI-001726, Jefferson Circuit Court;

2. Any and all communications, correspondence, or transmission of information between you (including any agent, representative, or attorney acting on your behalf) and United Parcel Service, Inc. (including any agent, representative, or attorney acting on UPS's behalf);

3. Any and all agreements, contracts, or stipulations, whether formal or informal, embodied or referenced in any documents of any kind;

4. Any and all documents reflecting payments from United Parcel Service, Inc. to you (including any designee to whom you may have assigned a right to any portion of payment offered to you);

5. Any and all recordings, statements, notes, or any other material related to the substance of your Complaint in Case No. 23-CI-001726, Jefferson Circuit Court; and

6. Any and all drafts of any agreements, contracts, or stipulations you and United Parcel Service, Inc.

(*Id.*)  The subpoena was not served on Mancia until February 12, 2023.  (DN 18 at 224-25.)  On February 21, 2024, UPS was alerted for the first time that the subpoena had been successfully served, and Mancia's counsel advised UPS that she considered the Settlement Agreement to be within the scope of the subpoena.  (*Id.*)  On the next day, UPS filed the instant motion to quash Story's subpoena.

UPS objects to Story's subpoena in part, and moves to quash the subpoena to the extent that it would require the production of any of the following: (1) documentation of settlement discussions between Mancia's attorney and counsel for UPS; (2) a copy of the confidential Settlement Agreement into which Mancia and UPS entered to resolve Mancia's claims against UPS; (3) any information about any of the terms of the confidential Settlement Agreement between Mancia and UPS; and (4) any information about compensation paid to Mancia as a condition of the Settlement Agreement.  (*Id.*)  Story does not dispute that the foregoing topics and documents are included from the production and opposes UPS's motion seeking disclosure of the same.

## II.     LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows parties, *inter alia*, to command a nonparty to appear at a certain time and place to testify or produce documents.  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Under Rule 45, the court must, upon timely motion, quash or modify a subpoena that subjects a person to undue burden.  Fed. R. Civ. P. 45(c)(3)(A)(iv).  "The party seeking to quash a subpoena bears the ultimate burden of proof."  *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).  Whether a subpoena imposes an "undue burden" depends on

the facts of the case including the need for the documents or their relevance. *Kessler v. Palstar, Inc.*, 2011 Wl 4036689, *1 (S.D.Ohio 2011) (citing *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999)). In making this determination, the court must weigh the relevance of the requested material against the burden of producing the material. *E.E.O. C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir.1994).

Additionally, Rule 45(d)(3)(A) requires that a motion to quash a subpoena must be "timely" filed. Fed. R. Civ. P. 45(d)(3)(A). A motion made prior to the return date on the subpoena is timely. *Maysey v. Henkel Corp.,* 2018 WL 314859, at *2 (W.D. Ky. Jan. 5, 2018) (quoting *FTC v. Trudeau*, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012)). "However, in unusual circumstances and for good cause shown, failure to make a timely objection to a subpoena… will not bar consideration of the objection. *Trudeau,* WL 5463829, at *3 (quoting *Halawani v. Wolfenbarger*, 2008 WL 5188813, at *4 (E.D.Mich.Dec.10.2008)). In determining whether "unusual circumstances" or "good cause" exist, a court must examine whether: "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for [affected person] and counsel for subpoenaing party were in contact concerning the [affected person's] compliance prior to the time the [affected person] challenged legal basis for the subpoena." *Id.* (quoting *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y 1996)). If the producing party fails to show unusual circumstances and good cause, failure to timely object constitutes waiver. *Wolfenbarger*, 2008 WL 5188813, at *5.

### III.   ANALYSIS

As a preliminary matter, the Court notes that the instant motion pertains to discovery. Pursuant to the Court's December 15, 2023 Scheduling Order, the parties were prohibited from

filing discovery motions without first arranging and attending a joint telephonic conference with the undersigned. (DN 15 at 177-78.) In addition, counsel were required to make a good-faith effort to resolve the dispute. (*Id.*) *See also* Local Rule 37.1. UPS failed to arrange and attend a joint telephonic conference prior to filing the instant motion and there is no indication that counsel attempted to resolve the matter extrajudicially. The motion is subject to denial on this basis alone. Moving forward, the Parties are cautioned that the Court will not entertain discovery motions unless the dispute has been addressed at a telephonic status conference and counsel have conferred or attempted to confer with opposing counsel or other affected parties.

Story opposes UPS's motion on the basis that UPS lacks standing to quash a subpoena served on Mancia to which Mancia did not object herself. While Fed. R. Civ. P. 45 does not explain who has standing to challenge a subpoena issued to a nonparty, district courts within the Sixth Circuit routinely hold that parties to a lawsuit lack standing to challenge a subpoena served on a nonparty except on grounds of privilege or personal rights in the information sought. *See, e.g.*, *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002); *Polylok Inc v. Bear Onsite, LLC*, No. 3:12-CV-535-DJH-CHL, 2016 WL 7320889, at *1 (W.D. Ky. Dec. 15, 2016) (collecting cases). Within the context of settlement, the Sixth Circuit has ruled that communications made in furtherance of settlement may be protected from compelled disclosure in discovery. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 977 (6th Cir. June 16, 2003). Therefore, the Court finds that UPS has standing to challenge the production of settlement discussions between counsel for Mancia and counsel for UPS, including discussions of settlement terms or compensation. UPS does not, however, have standing to challenge the production of the Settlement Agreement between Mancia and UPS, including any information

regarding settlement terms or compensation that may be included in the Settlement Agreement.

Therefore, as will be discussed more fully below, the Settlement Agreement is discoverable.

The Sixth Circuit held in *Goodyear* that settlement communications are privileged.  *Id.*

This Court has similarly concluded that the "limited" protection afforded by *Goodyear* shields

from discovery "any communications made, or documents created, for the specific purpose of

furthering settlement negotiations."  *Westlake Vinyls, Inc. v. Goodrich Corp.*, No. 5:03 CV 00240

R, 2007 WL 1959168, at *13 (W.D. Ky. June 29, 2007).  In *Goodyear*, the Sixth Circuit explained:

> There exists a strong public interest in favor of secrecy of matters discussed by
> parties during settlement negotiations.  This is true whether settlement negotiations
> are done under the auspices of the court or informally between the parties.  The
> ability to negotiate and settle a case without trial fosters a more efficient, more cost
> effective, and significantly less burdened judicial system.  In order for settlement
> talks to be effective, parties must feel uninhibited in their communications.  Parties
> are unlikely to propose the types of compromises that most effectively lead to
> settlement unless they are confident that their proposed solutions cannot be used on
> cross examination, under the ruse of "impeachment evidence," by some future third
> party.  Parties must be able to abandon their adversarial tendencies to some degree.
> They must be able to make hypothetical concessions, offer creative quid pro quos,
> and generally make statements that would otherwise belie their litigation efforts.
> Without a privilege, parties would more often forego negotiations for the relative
> formality of trial.  Then, the entire negotiation process collapses upon itself, and
> the judicial efficiency it fosters is lost.

332 F.3d at 980, 983 (ruling that statements made in furtherance of settlement are privileged and

protected from third-party discovery).  UPS correctly asserts that communications made in

furtherance of settlement between Mancia and UPS are privileged, which establishes UPS's

standing to challenge disclosure of the same.  In his response, Story argues that settlement

communications are relevant to his allegations against UPS and are exempt from the settlement

privilege due to UPS's conduct.  (DN 25 at 338-39, 343-44.)  As to relevance, Story alleges that

UPS retaliated against him by requiring Story to release claims against UPS in order to be included

in the release of claims between UPS and Mancia.  (*Id.*)  Story argues that the settlement

communications will therefore "contain information about how UPS came to make good on its

threat to cut Story out of a settlement with Mancia[.]" (*Id.* at 338.)  The Court is unpersuaded.

Story emphasizes that this information is unavailable because Mancia is no longer a party to this

action, but it ignores that *he* is still a party.  He fails to address the likelihood that the information

he seeks is in his own possession, such as in communications between himself and UPS.  Story

similarly fails to establish the necessity of discovery of settlement communications where, as here,

the Settlement Agreement itself is already discoverable.  In sum, Story has not articulated a

sufficient basis to justify the disclosure of privileged settlement communications that cannot

already be served by the disclosure of the Settlement Agreement or found elsewhere in

nonprivileged materials.

Story further asserts that any applicable privilege was waived by UPS when "it chose to

weaponize its 'confidential' discussions against Story," suggesting that UPS's actions were

wrongful.  (*Id.*)  Story relies on *Justice* to assert that UPS's conduct in the negotiations phase

constitutes a waiver of privilege.  *See Justice v. Meares*, No. 3:19-CV-185, 2021 WL 3410045, at

*6 (E.D. Tenn. Aug. 4, 2021).  In *Justice*, the defendants were alleged to have extorted a mother

by attempting to sell the right to unsupervised visitation with her child.  *Id.*  The "wrongful

conduct" at issue involved defense counsel seeking payment for fees and costs from the plaintiff

that the plaintiff did not owe and the coercion of a witness.  *Id.*  The "wrongful conduct"

contemplated in *Justice* is not comparable to the circumstances here.  The conduct at issue in

*Justice* was of a criminal nature, but there is nothing criminal or "wrongful" about UPS's conduct

in settlement negotiations, even if the negotiation involved UPS excluding Story from its

settlement with Mancia.  *Id.* (citing *Unarco Material Handling, Inc. v. Liberato*, 317 S.W.3d 227,

238–39 (Tenn. Ct. App. 2010) ("In this context, wrongful means includes, *inter alia*, fraud,

trespass, threats, violence, or other criminal conduct")). Further, Story is unable to cite any authority demonstrating that UPS's conduct was wrongful or that UPS's counsel acted in bad faith, as was the case in *Justice*, to constitute a waiver of privilege. Story only asserts that employers do not typically exclude employees from settlement. (DN 25 at 338-39.) While this assertion may or may not be true generally, any conduct that is merely atypical of the circumstances is not necessarily criminal or unlawful. Therefore, the Court finds that the disclosure of privileged settlement discussions between counsel for Mancia and counsel for UPS is not warranted.

In contrast, UPS lacks standing to challenge the production of the Settlement Agreement between UPS and Mancia. There are no grounds of privilege under *Goodyear* or personal rights articulated by UPS to establish UPS's standing to prevent the disclosure of the Settlement Agreement. In *Westlake Vinyls*, the Court "clarif[ied] that it does not interpret *Goodyear*, or any other binding law as creating a 'settlement privilege' broader in scope than one which shields from discovery communications made, or documents created, for the specific purpose of furthering settlement negotiations." *Westlake,* 2007 WL 1959168 at *13 (emphasis added). This Court has repeatedly found that "the settlement privilege does not extend to finalized settlement agreements." *Rogers v. Webstaurant Store, Inc*., No. 4:18-CV-00074-JHM, 2018 WL 6728575, at *3 (W.D. Ky. Dec. 21, 2018) (citing *Westlake*, 2007 WL 1959168 at *11); see *NOCO Co. v. Shenzhen Dika Na'er E-commerce Co*., No. 1:17 CV 02282, 2019 WL 9093481, at *2 (N.D. Ohio Aug. 27, 2019) (collecting cases in which courts in the Sixth Circuit found that confidential settlement agreements were discoverable). Thus, absent a sufficient claim of privilege, UPS has no standing to challenge the disclosure of the Settlement Agreement and the Court need not determine the merits of the challenge. Mancia, as the party to whom the subpoena is directed, is the only party with standing to oppose the production of the Settlement Agreement.

Additionally, Story asserts that UPS's motion is untimely.  Although he does not substantiate this assertion further, it appears that the untimeliness pertains to the motion being filed after the subpoena's compliance date. (*Id.* at 331-332.)  Here, the date of compliance and/or return on the subpoena was January 5, 2023. (*See* DN 18-1.)  However, the subpoena was not served until February 12, 2024 and UPS was not notified of service until February 22, 2024.  UPS was made aware of the subpoena on December 2, 2023 and was notified at that time that service would proceed on December 15, 2023 absent any objection.  The question thus is whether UPS should have filed the instant motion before December 15, 2023, when it could reasonably presume the subpoena would be served, or whether its obligation to object arose after service was effectuated on Mancia.  Rule 45 requires objections to be "served before the earlier of the time specified for compliance or fourteen (14) days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  Generally, a motion made prior to the return date on the subpoena is timely.  *Maysey*, 2018 WL 314859, at *2.  But here, the return date of January 5, 2024 was not rationally related to the service date of February 12, 2024.  Where, as here, the time of compliance would have been impossible to meet, Rule 45 permits parties to timely object within fourteen (14) days of service.  In *Boodram v. Coomes*, this Court opted to calculate timeliness based on the date of service instead of the date of compliance in similar circumstances.  No. 1:12CV-00057-JHM, 2016 WL 11333789, at *2 (W.D. Ky. Jan. 28, 2016).  The subpoenas at issue in *Boodram* had not been served at all.  *Id.* Nevertheless, the court rejected the plaintiff's argument that the defendant's motion to quash was untimely for being filed after the compliance date.  *Id.*  Likewise, the Court finds that UPS did not waive its objections by failing to raise them by the compliance date.  Pursuant to Rule 45, UPS was permitted to object within fourteen (14) days of service, which it did on February 22, 2024.

9

## IV.    ORDER

For the reasons stated above,

IT IS HEREBY ORDERED that UPS's Motion to Quash (DN 18) is **GRANTED in part,**

**DENIED in part** as discussed herein.

Colin H Lindsay, Magistrate Judge
United States District Court

August 29, 2024

cc:    Counsel of Record

10